Our next case for today is Alabama State Conference of the NAACP v. Attorney General, State of Alabama Alabama State Conference of the NAACP v. Attorney General, State of Alabama We'll hear first from the State of Alabama Thank you, Your Honor. May it please the Court. Barry Baldry for the State of Alabama Alabama's SB 1 incorporates Section 208 of the Voting Rights Act because both laws have the same overarching purpose, which is to protect vulnerable voters from experiencing manipulation, coercion, or fraud during the voting process. Section 208 does this by ensuring that blind, disabled, or illiterate voters are able to choose someone whom they know and trust to help them with their ballots, that they are not limited to a single state-provided poll worker. SB 1 furthers that same purpose by ensuring that individuals who opt for themselves as the assisters are not being paid by someone else to gain access to that voting material. I don't normally, I think, hear this sort of broad, purpose-based interpretive strategy from the Alabama Attorney General. Shouldn't we, don't we need to dig into the specifics of the text and see what they really mean? Yes, Your Honor, and certainly I plan on doing that, and I appreciate the Board's questions about Alabama's law. I'm focusing on purpose because the plaintiffs have raised a purpose-based preemption challenge, and so the purpose does matter. So why isn't this, this case is difficult in a number of respects, but one is why isn't this just an express preemption issue? I mean, this statute, the only point of this statute is to preempt contradictory state laws, right? I think that's correct, and of course we would argue that there is no preemption because our law is not contradictory. It actually incorporates Section 208 and gives full effect to Section 208. But does it really? I mean, it does say it, and it says it from the point of view of the person with the disability who is blind or who is illiterate. But from the standpoint of the person who would be the helper, it exposes all of them to criminal liability of up to 20 years in prison if they knowingly accept money in exchange for helping the person. And so to me, it seems like under the express language of the statute and particularly under Alabama law, let's say you've got a paid health aide and the person is on salary for being a health aide, and that person helps a disabled, blind, or illiterate person fill out their application to receive a ballot, an absentee ballot. Well, now that person is on the hook under this statute for up to 20 years in prison and up to a $30,000 fine because you have said knowingly, which means aware of under Alabama law, as opposed to intentionally, which means purposefully, having received money. And that person has received money for their job as a health aide and in their capacity as a health aide. They have then assisted this person in obtaining an absentee application. Why is that not the case? So I don't think that's covered for two reasons, Your Honor, and this goes to the two different questions that the court asks. And so I can take those in turn. Maybe I'll start with the scienter requirement since that is the one that you brought up, Judge Rosenbaum. So obviously, Alabama law does distinguish between knowingly and intentionally. I don't think that that makes a big difference here because the statute itself incorporates a purpose. So you have to, you know, the person would accept payment for distributing, ordering, or requesting the ballot application. So the purpose— Let me stop you for a second, though. Doesn't knowingly mean aware of as opposed to purposefully under Alabama law? Yes, Your Honor, but it is knowingly—in the statute, it is knowingly receive a payment for distributing. So the purpose is in the statute itself and then is tied to the mens rea requirement. But I guess I don't understand your argument. If the person is a paid health care worker or paid aid, whatever, and the only reason that they're there receiving the instruction from the person they're helping is to help that person in whatever capacity, including filling out their application for an absentee ballot, why are they not, as a matter of fact, receiving payment for doing exactly what the statute prohibits? Well, Your Honor, I think if you ask that person, what are you being paid to do? And so take Mr. Peebles's home health care worker. He has a home health care worker all the time. What is that person being paid to do is to provide general assistance, maybe to go to the drugstore, maybe to provide— But again, I'm so sorry. We're exposing people to a 20-year prison sentence. 20 years. Well, we don't think we are. $30,000 maximum fine. It seems pretty clear under the statute that if you receive pay, and one of the things that you do in order to get that pay is to help to fill out an application for an absentee ballot, you are exposed to that. And it's not clear to me—maybe you could tell me under the plain language of the statute what I'm missing, because I may be missing something, but it's not helpful to me for you to say, well, let's think about what the health care worker thinks he's being paid for, because I think a lot of health care workers would think they were being paid in part for filling out the application to help the person they're assisting. So tell me under the plain language why the plain language requires the meaning that you are attaching to it. Well, Your Honor, I guess two points. One is I don't think we have to show that it requires the meaning that we're attaching. We think it's enough that it is a permissible reading, both for the presumption against preemption, but also to avoid constitutional questions and because of the rule of lenity would kick in if there are two— Where's the constitutional question here? I mean, it seems to me there are at least three independent sources for where this would be constitutional. I mean, you have the 14th Amendment, you have the 15th Amendment, you have the Election Clause, at least as it pertains to, you know, congressional elections, senatorial elections. So I'm not seeing where there's a constitutional problem. I think there's—under plaintiffs' broad reading of Section 208, in which they think that Section 208 would wipe out all manner of state laws that protect voters from voter fraud, I think that raises significant constitutional questions under the 14th Amendment, and whether it's proportional or congruent to the problem that Congress was trying to address, at least as addressed in the legislative history. It also affects SB 1 itself because, you know, plaintiffs have brought a preemption claim, which is relying on the Supremacy Clause, and so it would construe SB 1 in a manner that would be unconstitutional, and we don't think that that is the best reading. As per the textual support, I'd also point to Section E, which is the incorporation of Section 208 itself in the Predicate Act canon. So if we give effect to Section E, which plaintiffs pretty much read out of their interpretation of SB 1— Well, let me stop you on that, because if we give effect to Section E, I think your argument was there's a surplusage problem, right? That's one of my arguments, yes. Okay. Well, to me it doesn't seem like there's a surplusage problem, because this part—Section E refers to all parts of the voting process, right? Is that right? Yes, Your Honor. Okay. But the two provisions, the giving and receiving provisions, refer to—are only in connection with the—or at least the— they're only in connection with obtaining or assisting in filling out the application for an absentee ballot. But there are a lot more parts to the voting process than that, right? So it seems to me—I mean, you could have somebody go into the voting booth with you if you qualify under Section 208. That makes it not surplusage. Isn't that true? Well, I don't mean to interrupt. I mean, SB 1 is all about the ballot application process. And so read in context, it would suggest that Section E is about that same process, not about some other thing that's not covered and not addressed by SB 1 at all. So read in context. Yeah, SB 1 is just about the absentee—or the—it's not about in-person voting at all. Correct. Correct, Your Honor. What about—it seems like your argument is that Section E essentially functions as a savings clause, right? I don't think that takes out any kind of inappropriate or conflicting application of SB 1 to this category of voters who suffer from blindness, disability, or inability to read or write. Am I understanding you correctly on that? I think that's fair in the sense that we read Section E to—in harmony with the other provisions so that if there is a potential conflict, we want to make sure that the blind, disabled, or literate voter really is able to exercise his right to have a assister of his choice help in the ballot application process. So with respect—so we've been talking about Section D, but with respect to Section C, you basically have no other argument except to just say that E creates some kind of exception to C, right? That's your argument? I think that's fair, Your Honor. I think you have to give effect to Section E. Section E does provide that right to the disabled voter. The problem with that—I mean, C actually does have some exceptions that are delineated, right? It refers to if there's a state of emergency declared, and it refers to—I think it refers to if the medical— if the person who's helping is—has some kind of medical problem within five days, right? So it does have exceptions delineated. Would you agree with that? Yes, Your Honor. Okay, and under Alabama law, Alabama law says when we delineate exceptions, we want those exceptions read strictly, and it doesn't delineate the Section E exceptions, right? Only in Section E. Right, but Section E doesn't—Section E talks about the rights of the person who is disabled, illiterate, or blind. It doesn't talk about the potential for the person who's helping that person to avoid criminal liability of up to 20 years in prison. So two thoughts on that, Your Honor. One is that it is precisely because Section E is there that I think the exceptions in C make sense. In the expresso unius canon, we're talking about a list of things that are of the same kind. The listing in Section C lists things that are of the same kind and so that are not covered by Section E, which are blind, disabled, or illiterate voters. Those are covered elsewhere, so there's no reason for them to be covered or addressed in Section C because they're addressed in Section E. But again, that doesn't go to—so there are two different parties we're concerned about here, right? One is we're concerned about the voter who is blind, disabled, or illiterate. And that's what Section 208 addresses and Section E. Two, we're concerned about the person who wants—you know, who the blind, illiterate, or disabled person wants to help them. Okay, because there's potential liability for both parties. We've covered the voter, but I don't see how E, which speaks only to the voter, covers liability issues with respect to the would-be assister. Yes, Your Honor. I think the predicate act canon would be one answer, that if the voter needs the assistance and has the right to that assistance under Section E, then there has to be some way for him to actually get that assistance. Otherwise, it would be a meaningless right. We don't read statutes in that way, and so there has to be some assister who could provide assistance without facing criminal liability. That's how we read Section E in harmony with Section C and D. Wouldn't the statute more clearly do what you're saying it does if Section E were called out in the same way as Section F within Section C? Well, just to be clear, the discussion of Section F in Section C actually refers to a different statute, right? Yes, Your Honor. Right, so would—is that what you think the difference is? Or wouldn't it have been more clear for the legislature to reference Section E in the same way? I think certainly that would be—maybe that's more clear. Maybe that would have been a better way to draft it. I don't think that that means that the way that the legislature did it is unconstitutional. And the question here is whether Section 208 preempts it. And again, plaintiff's theory is that Section 208 preempts any state law that restricts the universe, the potential universe at all. If that reading is wrong, then we should think that reversal is warranted. Here's the thing, though. I think the nature of our questions are that we would like to figure out what this state statute means so that then we could determine the preemption question, I guess. I mean, I think there's a world in which the plaintiff's theory is wrong, but the statute is still preempted, right? I mean, you can see that that is a conceivable outcome of this case. And to that I would say some other plaintiff could raise some other theory, but the plaintiffs here have not done that. And here we're on an appeal of a preliminary injunction. It was their burden to overcome the presumption against preemption and show a right to the extraordinary equitable relief of a preliminary injunction. I'll also address, if I could, just a second. I'm sorry. I've got another question for you before we move on. So let's say that the statute is susceptible of the interpretation that you have given, which is that it exempts anybody who's helping an assistant, you know, a person who needs assistance because they're disabled, illiterate, or blind, right? Yes, Your Honor. Okay. Isn't that how the injunction requires you to construe the statute? I don't think so. I think the injunction would also prohibit us from enforcing D-1 to a political campaign who pays staffers to go out and work the absentees, as one operative told the absentee election manager in Houston County. And so if that person is being paid by a third party to go and gain access to the person's voter materials, we think that is prohibited under SB-1, and it seems that the court's injunction would reach that. So I guess this gets to a question that I was thinking of earlier, which is your argument depends not only on our seeing Section E as a savings clause that imports whatever protections are in Federal Section 208, but also you need us to conclude that the Federal Statute Section 208 doesn't kind of prohibit the sorts of assistance that you're saying that this also applies to. Is that right? So ultimately we need to look at what Section 208 could theoretically bar, correct? Yes, Your Honor. And Plano's theory is that it would bar a state law that prohibits someone who's been convicted of voter fraud from being the assister. We think that that is absurd. We don't think that that is the best reading of Section 208. And because of that, we don't think that it was the manifest purpose of Congress to wipe away all such problems. Why would Congress call out? I might be more inclined to agree with you if Congress didn't call out the employer or the union, right? Those are examples that Congress at that time found concerning. Now, I suspect that third-party voter registrations that have, you know, done some of the things that courts and states have found problematic, maybe that wasn't going on at the time when the statute was passed. But if Congress meant to establish a broader allowance to keep people who had kind of bad aims rather than good aims from helping this category of people, why wouldn't it have written that more broadly rather than calling out two specific examples and leaving it at that? Well, I think the two examples, and again this goes to the expressiveness and the contextual application of that, the question is, by providing those examples, can we reasonably infer that Congress meant to, you know, considered all these other alternatives and meant to wipe them from the board? And I don't think that that is the best reading of Section 208. That instead, you know, if our law was limiting other people in the workplace, I think that would be a much closer question. If our law said you can't use a co-worker as an assister, that's probably preempted because of the expressiveness canon. But that has nothing to do with other laws about, you know, felons providing the assistance or some paid operative providing the assistance. I just don't think that that is covered one way or the other. But why do we think, given the text of the federal statute, that Congress meant to let states freelance on who would be a harmful person to help with a ballot rather than a helpful person? We don't really think this goes to the presumption against preemption, that these are areas in which the states have always legislated. These are core police powers of the state. Yeah, but that doesn't apply if it's, I mean, I thought we just agreed. The whole point of this statute is to preempt state laws. To preempt certain state laws. I mean, I thought the presumption against preemption applied once we're not in express preemption land. That once we're in the land where we agree, the point of the statute is to expressly preempt state laws. The presumption against preemption doesn't have anything to do, there's nothing to presume against because it's express preemption. I would then also raise the constitutional doubt. Let me just ask you this. Are you aware of any case from any court, except for the Fifth Circuit one that you did recently, that, and I'm not sure what they were saying, that has said there's an express preemption here, the point of this statute is to preempt state laws, and we are going to apply the presumption against preemption? I'm not aware of a case. I'm not aware of one either. I've looked at it. I can't find one. But there might be one out there. If I could quickly address this certification issue. You also didn't address the first issue that we asked you to address, which was, does this law prohibit a voter from paying someone to help that voter? No, Your Honor. Okay, why not? So I think there are probably two textually permissible readings of the statute. One would be, well, you read third party to mean anyone who's not the primary parties. Those primary parties would be the voter in the absence of the election manager. Therefore, anyone else is a third party. And so under that reading, you could encompass the voter. We don't think that that is the best reading. We think the district court actually got this right. It's on page 55 of its motion to dismiss order. It says that the payment and gift provisions are designed to protect voters with disabilities from selecting an assister who is receiving some payment or gift by a third party to render that assistance because such persons may have nefarious incentives to manipulate or unduly influence the voter. We think that is the proper reading. And to kind of break that down, I'll start with section D-2. There are three individuals in D-2. There's the person who's paying or providing a gift. There's the third party who's receiving it. And then there's the voter. And obviously a voter can be a person. But the question is, did the legislature use those different words to have different meaning in this context? And we think the answer is yes. In part because, I mean, one is that if the voter pays someone for help, then that person becomes an agent of the voter and is no longer a third party. That would be different than if that person was being paid by a campaign, for instance, to gain access to the materials. And then read in context, the overarching purpose as elicited from the context is to protect voters. And so we don't think that would make sense to criminalize the voter who's the victim of the voter fraud. And that also makes sense in reading the different criminal provisions in D-1 and D-2. D-1 is a Class C felony for someone who receives the payment and goes out to access someone's ballot materials. D-2 is a much harsher Class B felony. That makes sense if D-2 is aimed at the campaign who is trying to work the absentees and gain access to the materials. It does not make sense if we're talking about the voter. And so when faced with these two possible interpretations, we think the one that saves the statute and applying the rule of lenity protects the voter. That is the textually permissible one and the best reading of the statute. The issue with that, though, is that doesn't just—I mean, you're saying save the statute from preemption with respect to disabled and sort of other voters that are protected by 206. But if you read this to say, you know, you're trying—the way I read it, you've got sort of two limiting sort of readings that you want us to adopt of this. One is that it really only applies to sort of bonuses where someone is paid. If you're being paid for some other thing and just like as an ancillary part of your— correct me if I'm wrong—that you're being paid for some other thing and as an ancillary part of what you're being paid for, you help someone vote. This doesn't cover that. And I think that goes more to the signature requirements. Right. So that's one of the things you want us to say, right? Yes, sir. The other thing you want us to say is that this only covers third parties paying to help someone vote. So if the voter themselves is paying, then that's fine. Yes, sir. Those are things that have really nothing to do with disabled people or blind people or anything. That's just—I mean, those aren't limited readings that save it from preemption under 206, so much as just limited readings that would allow a lot more people to do things that have nothing to do with disabled or blind people, right? Well, I think those are best readings under state law that reads, you know, everything in harmony and given the purpose of the statute to protect voters. And, you know, these are criminal provisions. And so to the extent that you can read it one way or the other, I think the rule of lenity would suggest a more narrow reading. So like the League of Women Voters, I forget there was an affidavit in the record or whether this is just something that—I forget where I read this, but there's someone that said, look, I work for the League of Women Voters. And, you know, for most of the year, I just, like, drive around. I, like, pass out flyers. I help people register and stuff like that. But then on Election Day, I drive people, you know, to the polls. And this person is, like, a paid volunteer or they get some gift. They get, like, a pencil or something from the League of Women Voters to help them. You know, under your reading, that's all fine, right? Yes, Your Honor. Okay. And that would be all fine whether it was disabled people or just whatever? Yes, Your Honor. Okay. The last question we asked you was the certified question issue. Yes, Your Honor. What do you think about that? So I don't think that the—under plaintiff's theory, as I mentioned before, I don't think this turns on these specific questions of Alabama law. But to the extent that the court disagrees with that, then obviously we would ask the court to certify the question to the Alabama Supreme Court. Here's the issue I have where I—so I think we've already addressed. With respect to C-2, your only argument is that it's somehow saved by E. Why wouldn't the same thing be for D-1 and D-2? If E creates just sort of an exception for 206 protected voters, F creates an exception for UOCAVA voters, E creates an exception for 206 voters, why wouldn't that exception just apply to D-1 and D-2 the same way as you argue that it applies to C-2? I think it does, Your Honor. I think there are also additional contextual clues from D-1 and D-2 itself that would not apply to the voter. Okay. Doesn't it—if I'm a person who is employed to help a disabled voter just as a general matter, right, wouldn't it matter more to me that the Alabama Supreme Court said this statute does not apply to that category of people as opposed to the Attorney General suggesting in separate litigation that they think that's true? Why wouldn't certification matter to the extent that we thought that that's a problem? I'm not saying that necessarily that's the deciding factor, but to the extent that it did matter, wouldn't certification be important? I think it could be important to that person. I don't think that that is the kind of claim that the plaintiffs have raised here simply because of how they read Section 208. But again, if the court really does think that the case turns on these matters of how the state law is interpreted, then we would think certification is proper. I guess I would also ask that, especially given our subsequent briefing in this argument, that the court could stay the underlying preliminary injunction if you do certify, while the Alabama Supreme Court considers the issue, because we do have elections coming up. Here's one more question on this federal-state interaction. So I think you've said that Section E imports Section 208 into Alabama law. Am I understanding that correctly? Yes, ma'am. Is Alabama obligated to enforce whatever the federal court interpretation of Section 208 is? Let's say whether it's the 11th Circuit or even the Supreme Court. If the U.S. Supreme Court says that Section 208 means exactly what it says, that the only people who are not allowed to help a voter in this category are someone from their employer or someone from a union, and all the parade of horribles that you suggest, those people are allowed to help. Does that mean that Alabama law also says that all of those people are allowed to help a disabled voter? Well, at least it would mean that we would enforce it in a way that is consistent with the Supreme Court or the precedent from this court, absolutely. Okay, thank you. Yeah, so one more question about – and this is one of the reasons why it seems to me that one conceivable outcome of this case is that we could disagree with the plaintiffs' read of federal law, but you could still lose. It goes back to this, does it prevent a voter from paying someone to help the voter? You analogize to the right of assistance of counsel, which I think is like a fair analogy. But I think you would agree with me that if a law prevented someone from paying their lawyer, that that would violate right of assistance of counsel, right? So like if for some reason the state law said, oh yeah, you have the right to assistance of counsel, but your counsel has to be free, has to be pro bono, wouldn't that go right? Wouldn't that law go right to the heart of assistance of counsel? I think that's fair, Your Honor, simply because there aren't that many lawyers who would represent all defendants pro bono. But here the norm is that everyone – I'm not aware of any instance that the plaintiffs have raised in which someone could not get assistance for their voter application materials without paying someone. Is that like a fact issue, though, or is it just like inherent in a right is the ability to exercise that right by an exchange? So for example, think about the First Amendment. You know, what about a law that said, oh, you can have all the churches you want to, but none of your pastors can be paid. They often be volunteers. And you might well establish that like, look, you know, there are a lot of people who are willing to volunteer to pastor a church, and that's fine. But wouldn't that still violate the First Amendment? And the Second Amendment, same thing. Like, you have a right to have a gun, but you have to get it for free. You might well establish that there are lots of people who are willing to give guns away for free. But doesn't that restriction on like the purchase element, the idea that you can enter in sort of an economic transaction, a commercial transaction to get the thing you need, isn't there some problem inherent in that? Your Honor, I think, I mean, to the extent that the question here is what the district court thought it was, which is whether the voter's right is unduly burdened by the state law, I do think that is a factual question in the sense that plaintiffs have to show that someone is actually burdened by the law. And they have not been able to do that. And that would be true even if the law applied to prevent a voter from paying someone, which, again, we don't think that is the best reading of the law. All right. Thank you very much, counsel. And we gave you 17 extra minutes, so we're going to do the same for the appellees here. Thank you, Your Honors. Good morning, and may it please the Court. Anuja Fateh on behalf of plaintiffs. So just to reframe, this case is limited, to use the district court's words, to a limited injunction that simply requires Alabama to comport with the plain requirements of Section 208. And so the preliminary injunction simply does require what Alabama to do is to honor what federal law and the Supremacy Clause requires. And it goes no further than that. To be clear, it leaves the remainder of SB 1 in effect. And it, of course, we do not challenge any other law besides SB 1 in this case. And so back to the plain text, Section 208 is a very straightforward statute. It simply requires that blind, disabled, or low literacy voters have the right to vote with the assistance from a person of the voter's choice, other than those two exclusive exceptions enumerated by Congress. So what it does is by its plain text, Section 208 prohibits states from narrowing the universe of assist stores or assistance beyond what federal law requires. And so we submit here that the conflict with SB 1 is just as equally straightforward, Your Honors. It's a sweeping statute that criminalizes with up to 20 years in prison, broad forms of absentee application assistance and assist stores, thereby plainly restricting the federal right of 208 voters, both under the submission restriction as was discussed and under the payment and gift provisions. And that sweeps in employees like home health aides, like trusted employees of plaintiff Alabama Disabilities Advocacy Program. And so there's where you lose me, I guess, because the way you try to set the case up is sort of like, it doesn't matter what state law means, but then you start by saying, then you go into, well, the problem here is that home health aides and people who work for disability advocacy organizations can't assist. And then the state's response is, well, they can. That's what the state says, that we should interpret the law to say that they can't assist. Sure, Your Honor. And I think we don't mean to suggest the state law doesn't matter. Of course, preemption is an inquiry of putting the state law versus the federal statute. And here, the state law, what it says, and according to the plain text of what the state law writes, as the legislature wrote it, it says that people who are paid or receive compensation knowingly, without any sort of limitation beyond that, are criminalized under D-1 and D-2. And I heard my friend's argument about, well, the subsection E somehow immunizes or cures the 208 problem. And certainly, if there was a way to cure the 208 problem, we would welcome it. We wouldn't be here. Okay, well, I think we've talked about several ways. So one way would be to read E the same way F is read. So F is an exception for UOCAVA voters. And you could say E is an exception to all this for disabled 208 voters. Why isn't that a way to solve it? So just you've got all these restrictions. You've got the restriction in C-2. You've got the restrictions in D. And just E is an exception for disabled people. Sure, Your Honor. I think that if there was the express language in the statute, so at the beginning of each of the provisions, the submission restriction and the compensation and gift provisions, I think as was noted, it says, you know, except for in circumstances governed by F. Just to be clear, though, it says 17113F, which is a different statute, which is a statute for emergency. Right. Okay. So not the F in this statute. Right. Everybody's clear about that? Okay. So this statute, F says, the F in this statute says that voters voting by absentee ballot through the Uniform Overseas Citizens Absentee Voting Act are not subject to this section. So there's no reference to this exception for UOCAVA voters under C or D. We all agree with that. Sure. Sorry. Sorry. To be clear. So UOCAVA obviously functions differently. It doesn't require both an assister to be involved with that process. Yeah, but there's an exception. I guess my point is the statute has an exception for UOCAVA voters in F that is not referenced in C or D. We agree with that. Yes, Your Honor. Why isn't E the same as F? Why isn't it an exception for another class of federally protected voters that is also not referenced in C or D? Sure. So I think the problem is that what SB1 prohibits is the assisters itself, and so reading E, which is, you know, essentially recitation of Section 208, it says, you know, any voter may require assistance, but it never, and I think Judge Proctor correctly found this, it never in the statute ever says an assistor can't be liable, and I think, you know, with respect to the submission restriction, if there is a way to read the submission restriction to say that assistors are also not liable, we would certainly welcome that. I don't think it's available in the plain text. But if that's your argument, then why wouldn't someone who's responsible for, say, collecting UOCAVA ballots on the battlefield and getting them to the next spot, I think by the plain terms of the statute, that person would be criminally liable, and I think no one is arguing that Section F doesn't remove that form of liability. So why wouldn't it be the same for E? Sure. I just think that, you know, obviously UOCAVA is not at issue there, and I don't pretend to know exactly what all is required by UOCAVA, but I do think that, you know, with respect to Section E, you have to create some sort of certainty for assistors, which Judge Proctor found, and, you know, perhaps there's a case to be brought on behalf of people collecting on behalf of UOCAVA voters as well, but because there is no protection, and I think the other problem is I think they're taking a little bit of a different position today, but in this litigation to date they've suggested that the savings clause of Section E does not apply to D-1 and D-2, at least does apply to certain of the plaintiffs. That makes no sense at all, honestly. That makes no sense because it either applies to C and D, or it doesn't apply to either one of them, right? I mean, that read from the state makes no sense at all. I agree with you about that. I guess the way it just seems like, and I'm not going to belabor this point, but it just seems like if you put yourself in the mind of a legislator who's trying to write this law, they write this law, and they stop at D, and then someone says, whoa, there are federally protected voters out there that are not going to have to comply with this, and it's going to be a problem, and so they're like, oh my gosh, what are those federally protected voters? And someone says, you've got 208 voters that are disabled, and you've got uniformed overseas voters that are protected by UOCAVA, and they're like, well, we'll just accept them. We'll put an E, which just is exactly the federal statute, and we'll put an F that just says this doesn't apply to voters voting by UOCAVA. Why isn't that at least a read of this statute that is good enough that we should ask the Alabama Supreme Court if that's the right way to read the statute? Sure. I should say we actually have no objection to asking the Alabama Supreme Court on that. We can't rely on defendants sort of mid-litigation promises on this front, but to the extent there is a way to protect voters and assisters under E for any part of this statute, we certainly wouldn't object to that, Your Honor. On the first question we asked you to address, you think that this does prohibit a disabled person from paying, I don't know, their nephew to drive them to the polls, right? Yes, Your Honor, and again, that's just simply based on the plain text of the statute. I know it uses the word third party, but then it also uses the word a person with respect to payments, which I think is the problem, and we as plaintiffs can only look at the plain text as it's written. And I will emphasize that during the legislative debates on this bill, somebody asked this question of the bill sponsor, and what the bill sponsor said in the context of the grandfather giving the grandson $5 for gas money, he didn't say that, you know, that's outside of the statute. He said, you know, we simply need not worry about that, and so that to us is a serious problem. But again, if there's a way to read this statute to say voters who pay their assisters, you know, neither party in that transaction is liable under Section 208, we certainly would also appreciate that. Yeah, and then the other limited reading the state is offering you is that this only applies to, like, bonuses or something. So, and I want your thoughts on this. So the way I understand the state's position to be on that is that what they're saying is that you could have the disabled advocacy group or anybody, you know. It could be League of Women Voters, and this would apply to not disabled voters too, whose job it is to do normal stuff, but then some ancillary thing that they do is drive people to the polls, or they collect ballots, or they, you know, whatever. They seem to be saying that's okay. What do you say about that? Sure, and, you know, I will say this seems to be a different argument than they made below at least, but that being said, you know, we have obviously employees like employees of Plaintiff ADAP, who's a federally mandated disability rights organization. People like Dr. Peebles logically turn to them to help with a lot of things, including voting, and they might say, hey, can you please help me, you know, access and complete this absentee ballot? But someone like ADAP does not obviously get a bonus. That's just sort of part of their regular job, and below what the state has argued is that they think that that type of person typically could not perform that work, and I think the state has in the past drawn this distinction between home health aides, but today seems to say that it doesn't really matter. On that topic, though, doesn't the term third party require three parties? So wouldn't a person paying their home health aide leave two parties involved, whereas an outside organization paying some sort of worker in whatever form, that would be part of the voter would be party one, and then the outside agency and the helper would be parties two and three. Don't you need a third party involved to be paying a third party? So I think part of it derives from going back to the statute of SB1 itself, which doesn't obviously define third party, and I think third party can be construed, you know, are you someone who's sort of outside the, you know, voter election official transaction? And then the other thing I'll note is that— In the state, the voter, and then the third party. Right, exactly. The state is the second party. Is that your— That's one reading. I don't know, Your Honor. And then the other thing is, of course, SB1 also says a person, not a third party as the paying entity, so I think it's all sort of vague, and I'm not sure that any of this turns on the usage of the word third party versus not, I think, taking a step back. What the state has previously argued is somehow home health aides are not liable, but ADAP or someone like them could not perform this work as part of their regular non-bonus duties, but then today seems to be suggesting that actually they can, or this League of Women Voters person can perform the work, you know, if they get a pen, just so long as it's not, you know, specifically for the purpose of doing that assistance. And so, again, I mean, I think if there is a reading that allows people like our plaintiffs to do this work without fear of these severe criminal penalties, we certainly would welcome that, and that's, you know, essentially what our case is about and about the fact that 208 does not allow. Do you think there's any reading of the statute that the Alabama Supreme Court could offer that's different than the injunction issued here that would also not subject the statute to preemption? On that front, I think with respect especially to the purpose of subsection E, I mean, I think the difficulty is that to read subsection E as protecting assisters, either under the submission restriction or the compensation and payment restrictions or all of them, you have to sort of engraft new terms to do something to protect the assister, which understandably the district court was not in a position to do. But I think if, in fact, there is a reading that this court or the Alabama Supreme Court is able to offer that saves the provision using subsection E or that, you know, saves the 208 problem using subsection E, I do think that would avoid preemption problems and be, you know, different in the sense that it's clarifying something that the district court was not able to do in the injunction. But section E would need to mean whatever section 208 means, right? Yes, Your Honor. Those would absolutely have to be parallel. Yes, Your Honor. And, of course, section E essentially recites the text of 208. I know in the past they've made the old soil canon argument that all the old soil around 208 should carry with it. So I think perhaps it's getting at the same result, of course, but maybe through a different mechanism. So let me ask you something. Let me take you back for a moment to the third-party person argument, right? What if you have, let's say, you know, that a family member, like maybe an adult daughter or an adult son, pays the health care provider for the blind, illiterate, or disabled person? Does that also match the person's third-party problem? In other words, you've got, so the assister, the voter, is not paying the person, but the assister's adult son or adult daughter pays the aid to provide all aid, including assistance on seeking the application ballot. Wouldn't that also be a problem under the statute? I think so, Your Honor. And, again, I think it goes back to the fact that SB 1 itself doesn't really provide any explanation as to who is the third-party versus who is the person. And so the best reading is that all of these people would be swept under. And, of course, any restrictions on the voter, I think it sounds like we all agree, would be inconsistent with both Alabama's interests and also 208 itself. I have a series of practical questions that I may ask Mr. Boudry for his response to next. How do the plaintiff organizations here intend to discern if a voter is illiterate? I think blind is a little bit easier, maybe even disability, although there are some questions there, too, whether the disability has to impede the person's ability to vote in an independent way. But how does an organization discern, an organization as opposed to, say, a family member or a helper, discern that the person is illiterate for purposes of this statute? So I think under Section 208 and sort of under broader case law around literacy tests, et cetera, the standard is essentially, you know, can they read and write sufficiently well in order to understand the voting materials? And I think, of course, that's, you know, something that the voter would need to tell you, but obviously there may be indicia of that as well. But, you know, I think that is certainly something that would have to be figured out. Like to operate within this PI, does an organization have to, can they have a table out and say, hey, if you can't read that well, please come and we'll help fill out your ballot for you, or is something more required? I mean, there's evidence in the record about Alabama's comparatively poor reading statistics, but I don't know that not reading at a certain grade level as a percentage of the population necessarily means that there's free reign for help to anyone who says, you know, I don't feel like I got that great of a literacy education, right? How does that play out in practical terms? So I think, Your Honor, it obviously, you know, is dependent on, you know, a particular situation, but the whole point of 2-8 is that a person who needs help is able to ask for it. And so if someone, you know, says, you know, I really can't read this, and of course a lot of disabled people face challenges with literacy because of their disability as well. So there is an intersection there, but, you know, I think that just practically speaking, I will add, I think there's evidence at least in the complaint, probably not, you know, in the appellate record, that the Alabama absentee application, which is the only thing, of course, that's an issue in SB 1, does require an extremely high level of reading. I think I put it into a, you know, word processing program, and it said, like, college slash very, very high level high school. So I do think that there is a fairly high level of reading involved because, you know, it has all these fields, and then you have to check you're not someone who has committed a crime of moral turpitude, et cetera, and, you know, to understand what that means. But I do think that the, you know, the illiteracy remedy specifically requires, you know, just a voter who says, you know, I can't understand or I can't read this ballot or, you know, maybe by virtue of disability. So I do think that is part of the injunction here. I guess does the term assistance by a person of the voter's choice mean that the voter has to take the initiative in seeking help such that organizations could not kind of press themselves upon people and say, hey, you may qualify, let us give you this help? Do you see a distinction there between kind of being proactive versus being reactive? So I don't think Section 208 has that distinction, and I'll say that SB 1 doesn't have that distinction either, right? It bars anybody regardless of who is initiating the transaction. I think if it was a different law, you know, if it was a law that said someone cannot, you know, offer their services, perhaps that might raise other issues. It might raise First Amendment issues, etc. But I don't know that that would be at least as clear of a direct conflict with what Section 208 doesn't allow, which is restrictions on the universe of assisters themselves, not sort of, you know, other aspects of the assistance transaction, if that makes sense. If I may, Your Honor, just address one or two other points that I heard from my friend on the other side, which is, number one, this idea that we are trying to have all fraud laws. I think the term was wiped out. And again, to be clear, we're only challenging SB 1. Fraud, intimidation, etc. is not, is patently not assistance of a voter's choice. And as Judge Proctor was very clear below, you know, that is not the case. That's not covered by Section 208. That's not covered by the injunction. That's not something that's at issue here. Why not? If a voter wants a known fraudster to help, perhaps that fraudster has, you know, initiated contact, as you say, is not barred by 208. If a voter wants that person, then whatever the district court opinion may say, why wouldn't that be allowed? So I think that's a little different. So, you know, if, I mean, this hypothetical known fraudster, setting that person aside for a moment, I just want to be clear that what 208 doesn't protect, what SB 1, or what the preliminary injunction doesn't protect, is like any sort of coercion, intimidation, etc. to overpower a voter's choice. That is, that's patently not a voter's choice. Aren't these provisions in place because of the inherent risk of a motivated third party overpowering or influencing a voter's choice who needs a certain amount of help? So I think this goes back to just the Supremacy Clause issue itself. Obviously, Alabama, like many states, have an interest in enacting their own laws and have reasons for doing so, and we don't dispute that at all. But so does, of course, the federal government. And enacting Section 208 itself, the Congress was expressly concerned with the risk of undue influence, etc., and what it said was, you know, we think the best way to address that is the remedy espoused in Section 208. So that the state has this interest in enacting fraud, does not, or excuse me, in addressing fraud, is not itself a basis to override the Supremacy Clause. And, of course, the Supreme Court has been very clear that, you know, where a state has a strong interest or where even the state and the federal government have the same interest, that doesn't give license to override, you know, where there is a direct conflict. No, I mean, I agree, but it seems like you're hedging a little bit, because I do think it makes, the full import of your argument leads to some distasteful results. And I think that what you're saying is, well, of course the state could ban, like, really bad people from helping, but our clients are not really bad people. Our clients are just, you know, full of intentions to help the voting process in the most pure and lovely ways, right? But, you know, Alabama obviously thinks that there's a risk with any third-party voter organization. Now, right or wrong, I don't know. But do we really have license to say, well, Alabama, you're wrong about these people, but not about, say, these foreign operatives, right? Are we really in a place to say that the statute blocks A but not B, just based on our own intuition about which one is really harmful and which one is really helpful? So what I would say on that, Your Honor, is, for starters, of course, the law here is not nearly as surgical as, you know, a foreign operative ban law or anything like that. The law here broadly outlaws categorical assisters, which I think is directly contrary to the plain text of Section 208. But, you know, I think there's actually a case from Justice Thomas, who was joined by Justice Scalia and some others, called Magwood v. Patterson that I think addresses or gets at the overriding principle here, and that is 130 S.C.T. 2788. It's a 2010 case. And what Justice Thomas said is we base our conclusion on the text, and that text is not altered by consequences the state speculates will follow in another case. And I think that principle applies equally well here. And the reason I say that is there may be this bucket of, you know, other surgical questions that could or couldn't hypothetically raise conflict issues, and we don't dispute that. And, yes, you know, I think the overarching principle is that 208 does not allow categorical exemptions or, you know, restrictions beyond what Congress has allowed for. But, you know, assuming this other case was ever brought, I think that would be the appropriate time to both address, number one, is there a facial conflict, and number two, is that possibly that rare and exceptional circumstance where something like the canon against absurdity to use this Court's case law, is that rare situation where we say, you know, we might actually, as a court, override the plain text because Congress couldn't have intended the application. I guess I just see some tension in your arguments there. I mean, if we read 208 to say, look, the employer and union exceptions to 208 are the only things that anyone can ever do, then that resolves all the, like, parade of horribles, right, that the Fifth Circuit has and that the State raises and that, I mean, we would be saying, look, if the State says people convicted of voting fraud can't be assisters, then we would be saying, yeah, they can because that's what 208 says, right? So, Your Honor, I think that's fair. The only reason I said what I said is, you know, if there is a potential concern about, you know, maybe these other very, very specific, very, very different circumstances, I think there's always the possibility of addressing those in context. But I do think, yes, Your Honor, the best reading is the plain text, and I think that's what really does guide the Supremacy Clause analysis. But I got another thing from what you said in sort of the same spiel that you gave, which is, but this is a really broad restriction on who is allowed to assist disabled people in voting, and that's more about not, you know, 208 and that's it, unions and employers, that's it, but it's more about, look, even if there's some, I mean, if you look at the dissent, for example, in the Fifth Circuit, the dissent says, look, all of these other things might be sort of, you know, they're kind of indirect limitations, but this is a much broader limitation, and that's the conflict. And so do we have to, I guess my point is, couldn't we just say we don't agree with or we're not addressing the sort of 208 and that's it, employers and unions, that's it. We could just say, look, the text of this is that it's a really broad restriction on who can help, and that's too broad, and so it's preempted for that reason. I think, Your Honor, it could go either way. Of course, you know, I think our reading of the plain text of Section 208 we think is the best reading here, and it's especially so in this case where you've got these broad swaths of exclusion, so I don't think it's nearly a close call, but that's all to say that— I guess if your broad reading really is the right reading, then it's unclear to me how we address edge cases. It seems like you're giving, like so, for example, just a law that says, I mean, what would you just say about a law that said that if you're committed to voting fraud, you're not allowed to, you can't vote because you've been committed to voting fraud, so you're not allowed to vote yourself, and you're not allowed to vote anybody else's ballot or assist them with voting their ballot. Like you would say that that is preempted, right? Yes, Your Honor, and I think maybe it's worth putting a concrete example for that because, you know, you could imagine a situation where there's someone like that who is living with their disabled mother, and, you know, that's the person who the disabled mother would ask for, and so I think that goes back to the broad choice empowered by Section 208. So, yes, I do think that, Your Honor— Let me ask you a question about that. I mean, I'm just sort of throwing out ideas at the moment, but like, you know, in other contexts, for example, a Fourth Amendment, if you're going to give consent for a search, or the Sixth Amendment, if you are going to give up your right to counsel and seek to proceed yourself, we insist on an informed and voluntary and knowing choice. What if we construed—I mean, is there a way to construe Section 208 as providing the only exceptions to assistance as long as we're talking about a voter exercising an informed, voluntary, and knowing choice? So, for example, if we're concerned about somebody exercising undue influence, then the voter's not making a voluntary and informed choice, and so if we were to understand the words of 208 in that way, wouldn't that take care of the problem? I think that's fair, Your Honor, and I think that's actually faithful to what 208 is about, which is, of course, centered around the voter's choice. But isn't—I mean, isn't that the state's interest in this law here? That the state's perception is that these third-party ballot harvesters are influencing the absentee voters? I mean, that what's going on here is not, you know, people in nursing homes deciding they want to vote absentee and deciding who they want to vote for. I think the state's concern is that—and the concern of, you know, the Carter report was that what's actually going on is you have these third-party groups that they just go to a nursing home and they sort of, like, get people to sign ballots, and then they take them back. Sure. So, I mean, of course, you know, in our view, our plaintiffs are not— Yeah, like this goes to Judge Grant's point. Your plaintiffs are, you know, as wide as snow, right, versus the other people. But, Your Honor, I think this also goes back to the purpose of the Supremacy Clause, which is to say, you know, what Section 208 is, is about the voters' choice. It's about empowering the voters' choice, you know, to the extent that the state is concerned with, you know, people who are not, you know—who voters are not voluntarily asking them to help. The state certainly has tools to address that, and we would also agree that that is outside of a proponery injunction here, Your Honor. Could it be, to my earlier question, that the way to discern if the person is of the voters' choice is that the voter independently requests that assistance from the individual or organization, rather than the organization being the one to make—to take the initiative to, say, come to the nursing home or come to the literacy center or come, you know, this, that, and the other? Wouldn't that be one way to know if it's the voters' choice, rather than what the state is concerned about, that it's the organization's choice? I think that could be one way, Your Honor. Of course, SB 1 doesn't contain any such limitation, and it doesn't sort of say what, you know, in what circumstances assistance can or can't be provided. But, you know, I think to—I think the broader point, you know, if there are— But just before you get to the—I mean, wouldn't your read of 208 preempt that law, too, right? So if a law said the only assisters that are allowed to assist are ones that are requested, and I don't know how you phrase it exactly, but, you know, ones that are requested and are not sort of, like, prompted by the group, wouldn't your read of 208 also preempt that? So I don't know, Your Honor, and I also want to be careful without having, like, an exact statute written in mind, but I think I was saying this earlier, you know, I think all 208 protects, right, is a voter's choice. And, you know, to the extent there's other laws that a state might enact, saying, you know, for example, you know, that we are going to prohibit someone from going in and offering that, you know, I don't want to say definitively that would not present a 208 problem or some other First Amendment, other problems I'm not thinking of, but I do think that is different than what SB 1 does, which is categorically bar assisters without, you know, any sort of limitation, which I don't think a Section 208 allows. All right. Thank you, Ms. Thachai. And, Mr. Boudry, you have three minutes. Thank you, Your Honors. Thank you, Your Honors. Just a couple quick points. One is plaintiffs have been consistent, just as they are here today, that their reading of Section 208 is this unbounded reading that would preempt any state law, even one that narrows the universe of potential assisters from six million to six million minus one. We don't think that that is the best reading of Section 208. And because of that, we don't think that plaintiffs have carried their burden of showing an entitlement to a preliminary injunction, even if there is some other plaintiff with some other theory of Section 208 that could come closer. We think that resolves the issue for this Court, and the Court should reverse for that reason. Second, counsel said that if there was a way to read the statute as we read it, they would welcome that, in which the voter is able to pay, in which the voter is able to exercise a choice. We've offered those readings. But the problem is you're not – you are not binding on how the state winds up actually applying this. And also, if that's what the reading is, why wouldn't the statute just say that clearly so as not to chill people from assisting and providing the assistance that 208 requires? I think the statute does say that in Section E, and this gets to Judge Brasher's point. Section E should be read just as Section F is. It provides a real place. Section E and Section F are written differently. I mean, Section F says it shall not be subject to this section at all, right? I mean, there's no language like that in Section E. And also, when we're talking about, you know, overseas voters, it's obviously a very different jurisdictional kind of question there. I mean, you've got people who are never going to probably even be in Alabama who might be doing the assisting there. I mean, it just seems like a very different situation, both on the text and circumstantially. I'm not sure that really helps you. I think our only point is that Section E has a meaning and that it has to be read in harmony with the other provisions. We think we've offered a way to do that. We think that that is the proper best reading under state law. To the extent that the court still has questions about that, we would welcome certification. We do think that that is the reading that the Alabama Supreme Court would give it. But when you say that reading, is your reading that it allows Alabama to deny voters' assistance from people or groups that Alabama thinks are likely to have their own interests at heart rather than the voters' interests at heart? And that's up to Alabama, whoever that is? Our reading is that it removes payment from third parties so that— For instance, in Quaklebush, the case that we cited in our briefs, there you had a mayoral candidate who had a campaign, paid his campaign staffers to go work the absentees. They helped with the ballot applications. And then when the ballots came in, they helped the voters with that. It turns out it was all fraudulent. The election had to be overturned because of those. And then the candidate said, look, Section 208 helps me. Use Section 208 as a defense. And that is the kind of thing that Alabama is trying to prevent by preventing third parties from— But I take it that you're saying that these organizations are, air quotes, helping the voters in ways that Alabama thinks are likely to lead to fraud. And these organizations are saying, no, we really are here to truly help voters. And that is the fundamental disagreement between the parties about what's going on with these particular organizations, right? So certainly, this is a prophylactic measure to try to reduce the instance in which a vulnerable voter feels manipulated or coerced. And so that's more likely if you have a paid operative showing up to provide assistance. That's less likely if the voter is able to choose someone whom they know and trust and already know, and there's no money exchange in the equation. No this for that, kind of quid pro quo arrangement. That's what Alabama law is trying to prevent. Do you know if these kind of third-party organizations were in existence or prominent in, I believe it was 1982 when Section 208 was passed? I'm not exactly sure. I know that the Carter report, which came later, discussed the rise in third-party organizations and the fraud that resulted in those kind of get-out-the-vote campaigns. I don't think that it was a big concern in 1982. Wouldn't it be interesting if Congress were to update legislation from time to time? It would be interesting. Or if Alabama took another crack at this one, you know? You might have a phone number of someone you could call and let them know that they might want to look at this one, maybe write it a little bit differently. In that case, we would ask for a certification. We do think that this is defensible. You want the Alabama Supreme Court to rewrite it for you. Yeah. Okay. Thank you very much, counsel. We'll be in recess until tomorrow.